BLACKWELL FORD, INC v CALHOUN

Docket No. 174443. Submitted May 7, 1996, at Detroit. Decided September 27, 1996, at 9:45 A.M.

Blackwell Ford, Inc., brought an action in the Wayne Circuit Court against Leo M. Calhoun, Sr., and others, alleging breach of a contract providing the plaintiff an option to purchase the defendants' commercial property and seeking specific performance under the terms of the contract. The parties had contemporaneously entered into two agreements. The first was the option to purchase. The second was a mortgage designed to ensure the defendants' compliance with the option and, should repayment of the option price become necessary, to secure the defendants' contingent obligation to refund the option price. The court, Diane M. Hathaway, J., granted summary disposition for the defendants. The court ruled that the option to purchase was not an option to purchase real property but was really a loan transaction. The court reasoned that when an option is part of the original loan transaction it is void, an allusion to the prohibition against the clogging of the right of redemption regarding mortgages. The court also ordered the plaintiff to pay rent for the property pursuant to the demands of the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. The circuit court erred in characterizing the option as a loan and in concluding that the option could clog the defendants' right of redemption.

2. The hallmark of a loan is the absolute right to repayment. Here, the plaintiff had a contingent right to repayment, not an absolute right.

3. The fact that a mortgage was executed incident to the option agreement does not transform the option into a loan. The existence of a mortgage does not alter the nature of the option. The agreement was an option to purchase the real estate.

4. The trial court erred as a matter of law in concluding that, because the option and the mortgage were executed contemporaneously, the defendants' equity of redemption was necessarily clogged and, accordingly, the option could not be enforced. Although Michigan precedent prohibits the enforcement of an

option executed contemporaneously with a mortgage where the option could serve to cut off the right of redemption, there is no set of circumstances under which the present defendants' right of redemption could possibly have been infringed. The prohibition against clogging has no application in this case.

5. The second agreement of the parties was, in fact, a mortgage. The defendants conveyed an interest in their property as security that they would perform their obligations under the terms of the option to purchase. While it is true that all the plaintiff's obligations were contingent in that the plaintiff was, of a certainty, bound by none, this does not alter the fundamental nature of the agreement as a conveyance of an interest in real property provided as security for an obligation. The agreements in issue are enforceable because under no conceivable set of circumstances would the defendants' right of redemption be clogged. Clogging occurs only where there exists a contractual provision that could cut off the right of redemption. Here, the plaintiff did not have a right to cut off the defendants' right of redemption.

6. Because the trial court erred in granting the defendants' motion for summary disposition, it also erred in reaching the issue of damages. The order awarding the defendants damages must also be reversed.

Reversed.

1. MORTGAGES — EQUITY OF REDEMPTION — CLOGGING OF EQUITY OF REDEMPTION.

A mortgagor's equity of redemption cannot be clogged and the mortgagor cannot, as part of the original mortgage transaction, cut off or surrender the mortgagor's right to redeem; any agreement that does so is void and unenforceable as against public policy; a clog or restraint on the equity of redemption denotes any provision inserted to prevent a redemption on payment or performance of the debt or obligation for which the security was given; clogging occurs only where there exists a contractual provision that could cut off the right of redemption.

2. WORDS AND PHRASES — "LOAN."

The hallmark of a loan is the absolute right to repayment; the party receiving the advance of money or property must be bound to repay it at some future time.

3. MORTGAGES — REAL PROPERTY.

A conveyance of an interest in real estate to secure the performance of an obligation is a mortgage; a mortgage does not create a debt, but merely acts as security for payment of the debt.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Robert W. Powell*) (*Michael F. Simon*, of Counsel), for the plaintiff.

*Alan R. Miller, P.C.* (by *Thomas J. Fayfer*), for the defendants.

Before: O'CONNELL, P.J., and GRIBBS and T. P. PICKARD,* JJ.

O'CONNELL, P.J. In this action to enforce an option to purchase real property, plaintiff appeals as of right an order of the circuit court granting summary disposition for defendants. We reverse.

In 1973, defendants, owners of a parcel of commercial property, entered into a twenty-year lease with Ford Leasing Development Company. The term of the lease extended until May 31, 1993. Ford Leasing had the right of first refusal with regard to any sale of the premises during the term of the lease.

In 1983, plaintiff became the sublessee of Ford Leasing. Plaintiff's sublease was coterminous with Ford Leasing's lease, that is, the sublease also expired on May 31, 1993.

In 1987, plaintiff entered into two agreements with defendants. The first of the agreements was entitled "Option to Purchase Real Estate." According to its terms, the option provided that, in exchange for $175,000, defendants granted plaintiff the option to purchase the property for $1,550,000 if exercised before February 5, 1990, and thereafter for $1,650,000.

The option anticipated two situations in which defendants would be liable to refund to plaintiff the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

price paid for the option, plus interest. First, if plaintiff exercised the option but defendants were unable to deliver marketable title to the property, defendants would be obligated to repay the option price, plus interest. Second, in light of Ford Leasing's right of first refusal, defendants were obligated to repay plaintiff the $175,000, plus interest, should plaintiff exercise the option but Ford Leasing in turn exercise its right of first refusal, thereby blocking plaintiff's ability to purchase the property.

The second agreement, a form mortgage, was entitled "Revised Form of Mortgage." This agreement created a mortgage in favor of plaintiff and was designed to "secure the performance of the [option] and the payment of the principal sum of" $175,000, plus interest.

Thus, in 1987, the parties contemporaneously entered into two agreements: (1) an option to purchase and (2) a mortgage designed to ensure defendants' compliance with the option and, should repayment of the option price become necessary, to secure the contingent obligation to refund the option price.

The parties, in the option, also attempted to avoid Ford Leasing's right of first refusal. The term of the option extended to August 31, 1993, that is, several months beyond the term of Ford Leasing's lease with defendants and plaintiff's sublease with Ford Leasing. In this fashion, the parties were able to ensure that plaintiff would have a three-month period in which to exercise the option during which Ford Leasing would have no right of first refusal. The option also provided that plaintiff would be allowed to remain on the property as lessee from May 31 to August 31, 1993.

This is precisely what transpired. Shortly before May 31, 1993, plaintiff notified defendants that it intended to exercise the option to purchase the property on June 1, 1993, immediately following the expiration of Ford Leasing's right of first refusal. However, defendants promptly informed plaintiff that they were "electing" to terminate the option, offered to return the $175,000, plus interest, and informed plaintiff that their present lessor-lessee-sublessee relationship with plaintiff would end on May 31, 1993. While this Court can only speculate regarding defendants' motivation in dishonoring the option, an unfavorable inference might be drawn from the fact that defendants did offer to relet the property to plaintiff at a price almost four times that specified in the option for the period from May 31 to August 31.

On June 1, 1993, plaintiff formally attempted to exercise the option to purchase. Ford Leasing, its right of first refusal having expired, could not block the purchase. Defendants subsequently formally refused to sell the property. Plaintiff remained in possession of the premises.

Plaintiff then filed suit, alleging breach of the option contract and seeking specific performance under its terms. Defendants moved for summary disposition, contending that because the option to purchase the property was executed contemporaneously with a mortgage on the property, plaintiff "could exercise the [option] at any time during the life of the Mortgage, effectively cutting off or 'clogging' Calhoun's right to redeem the property."

The circuit court granted defendants' motion. The court first ruled that the "Option to Purchase Real Property" was not, in fact, an option to purchase real

property, but "was in the nature of a loan" and could "functionally be characterized as a loan transaction" because the money "would have to be refunded, under certain circumstances." The court further reasoned that "when the option is part of the original loan transaction it is void," an allusion to the prohibition against the clogging of the right of redemption. The court also ordered plaintiff to pay defendants rent at the increased rate sought by defendants for the period after May 31, 1993. Plaintiff appealed. Our standard of review is de novo. *Hall v Hackley Hosp*, 210 Mich App 48, 53; 532 NW2d 893 (1995).

I

As stated in *Humble Oil & Refining Co v Doerr*, 123 NJ Super 530, 544; 303 A2d 898 (1973), "[f]or centuries it has been the rule that a mortgagor's equity of redemption cannot be clogged and that he cannot, as a part of the original mortgage transaction, cut off or surrender his right to redeem. Any agreement which does so is void and unenforcible [sic] as against public policy." "A clog or restraint on the equity of redemption denotes 'any provision inserted to prevent a redemption on payment or performance of the debt or obligation for which the security was given.'" *Coursey v Fairchild*, 436 P2d 35, 39 (Okla, 1967), quoting Wyman, *The Clog on the Equity of Redemption*, 21 Harv L R 459, 472 (1908). To quote at length from Michigan's leading case on the matter, *Batty v Snook*, 5 Mich 231, 239-240 (1858):

Equity is jealous of all contracts between mortgagor and mortgagee, by which the equity of redemption is to be shortened or cut off. The mortgagor may release the equity of redemption to the mortgagee for a good and valuable

> consideration, when done voluntarily, and there is no fraud, and no undue influence brought to bear upon him for that purpose by the creditor. But it can not be done by a cotemporaneous or subsequent executory contract, by which the equity of redemption is to be forfeited if the mortgage debt is not paid on the day stated in such contract, without an abandonment by the court of those equitable principles it has ever acted on in relieving against penalties and forfeitures.

In short, a mortgagor may not, at the time the mortgage is created, surrender his equitable right to redeem the property following a default.

The policy reasons underlying this universally applied doctrine, *Humble Oil, supra,* p 547, do not vary. " 'There would have been, without [this doctrine], a door open for the imposition of every kind of restraint on the equity of redemption, and thereby the borrower, through necessity, would have been driven to embrace any terms, however unequal or cruel; which would have tended greatly to the furtherance of usury, and the conversion of the equitable jurisdiction of the court into an engine of fraud and oppression.' " *Id.,* quoting *Youle v Richards,* 1 NJ Eq 534, 538 (1832).

In the present case, we disagree with the circuit court's characterization of the option as a loan and with the court's conclusion that the option could clog defendants' right of redemption.

II

First, the court was incorrect as a matter of law in concluding that the option was "functionally" a loan. The hallmark of a loan is the *absolute* right to repayment. As stated in *People v Lee,* 447 Mich 552, 559; 526 NW2d 882 (1994), quoting *Bankers Mortgage Co v*

*Internal Revenue Comm'r*, 142 F2d 130, 131 (CA 5, 1944), " '[t]he word "loan" implies an advance of money with an absolute promise to repay.' " The party receiving the advance of money or property must be bound to repay it at some future time. *Lee, supra,* p 558, citing 45 Am Jur 2d, Interest and Usury, § 117, p 102. Here, plaintiff had no absolute right to repayment, but only a contingent right to repayment. This contingent right to repayment would have arisen had plaintiff exercised the option and defendants been unable to uphold their side of the agreement because of the lack of marketable title or other cause outside their control. Therefore, because, under the terms of the agreement, defendants had no absolute obligation to repay the sum advanced, the option was clearly not a loan.

Further, the fact that a mortgage was executed incident to the agreement, which is discussed further below, does not transform the option into a loan. A mortgage does not create a debt, but merely acts as security for payment. *Ginsberg v Capitol City Wrecking Co*, 300 Mich 712, 717; 2 NW2d 892 (1942). For example, a purchaser of a home typically obtains a loan; a mortgage is obtained as security for the lender, but the obligation itself, the loan, is distinct from the mortgage. Thus, contrary to defendants' suggestion in their brief on appeal, the existence of a mortgage does not alter the nature of the option. Therefore, we will treat the "Option to Purchase Real Estate" as just that, an option to purchase.

III

Second, the court was incorrect as a matter of law in concluding that, because the option and mortgage

were executed contemporaneously, defendants' equity of redemption was necessarily clogged and, accordingly, the option could not be enforced. While we agree that Michigan precedent prohibits the enforcement of an option executed contemporaneously with a mortgage where the option could serve to cut off the right of redemption, we find that no set of circumstances could arise in which the present defendants' right of redemption could possibly have been infringed. The prohibition against clogging has no application to the present case.

Initially, we would clarify that the "Revised Form of Mortgage" was, in fact, a mortgage. "A conveyance of an interest in real estate to secure the performance of an obligation is a mortgage." *State Bar Grievance Administrator v Van Duzer*, 390 Mich 571, 577; 213 NW2d 167 (1973). Where the purpose of the instrument is security, " 'the instrument is treated as a mortgage and nothing else.' " *Barr v Granahan*, 255 Wis 192, 197; 38 NW2d 705 (1949), quoting *Smith v Pfluger*, 126 Wis 253, 256; 105 NW 476 (1905). Here, defendants conveyed an interest in the property in issue as security that they would perform their obligations under the terms of the option. While it is true that all plaintiff's obligations were contingent in that plaintiff was, of a certainty, bound by none, we do not find that this alters the fundamental nature of the agreement as an interest in real property provided as security for an obligation. Therefore, we find that the parties entered into a mortgage agreement.

Thus, in the present case we have an option entered into simultaneously with a mortgage. However, because under no conceivable set of circumstances would defendants' right of redemption be

clogged, we find the agreements in issue to be enforceable.[1]

Two chains of events could have come to pass in this case. First, plaintiff could have declined to exercise the option. Had plaintiff declined to exercise the option, the option would simply have expired. Plaintiff's option price would have been forfeited and plaintiff would have had no right to the return of funds.[2] Thus, under this first situation, there is no possibility that defendants could have foreclosed on plaintiff's mortgage because the contingent obligation that the mortgage secured could not have come into existence. Accordingly, there could have been no possibility that defendants' right of redemption would have been impinged upon.[3]

The other possibility is that plaintiff would exercise the option to purchase the property, as actually happened in this case. Once plaintiff exercised the option, defendants could have delivered marketable

---

[1] We acknowledge that there exists boilerplate language in the "Revised Form of Mortgage" that defendants are responsible for all taxes and assessments, among other similar items. This boilerplate language also provides that, should defendants fail to pay all taxes and assessments due, plaintiff, as mortgagee, may intercede and pay these obligations. Should plaintiff pay these items, the sum paid would become immediately due and payable from defendants, and, should defendants fail to promptly remit payment to plaintiff, plaintiff would have a right to foreclose on the property. However, this boilerplate language is negated by the fact that the lease provides that plaintiff is responsible for all taxes and insurance. Plaintiff certainly cannot foreclose on an obligation that is plaintiff's responsibility to pay.

[2] We have reviewed defendants' argument to the contrary, predicated on the mistaken belief that the option was a loan, and find it to be without merit.

[3] We note that the mortgage, until the expiration of the option (under the hypothetical we have posited) at which time the mortgage would dissolve as well, would have created a cloud on the title. However, it would not, at any time, have clogged the equity of redemption. These concepts differ markedly.

title to the property, and the purchase could have been finalized. Had this occurred, obviously, there would have been no possibility of foreclosure and, of course, no possibility that plaintiff could have clogged defendants' right of redemption.

However, as actually occurred in this case, once plaintiff exercised the option, defendants could have failed to deliver marketable title. This situation is more difficult to analyze conceptually, but yields the same result: at no time could plaintiff have clogged defendants' right of redemption. Upon plaintiff's exercise of the option and defendants' failure to deliver title to the property, the contingent obligation anticipated by the option would come into being. Under these circumstances, defendants would have been liable to repay plaintiff's option price, plus interest, and, it bears mention, this is the only situation under which plaintiff would have had rights under the mortgage. This obligation was secured by the mortgage. Had defendants then failed to repay the $175,000, plaintiff would have been entitled to foreclose on the mortgage.

Significantly, the fact that plaintiff could foreclose on the mortgage under this set of circumstances is a prerequisite to finding a clogging of the equity of redemption, but it is not, in and of itself, clogging. Clogging occurs only where there exists a contractual provision that could cut off the right of redemption. *Humble Oil, supra*, p 544; *Coursey, supra*. Therefore, to determine whether clogging exists here, we must examine the agreements between the parties to determine whether plaintiff would have had any contractual right, following foreclosure, to intercede and cut off the defendants' right of redemption.

In short, plaintiff had no such right. Defendants rely solely on the existence of the option, suggesting that once foreclosure proceedings had been initiated, plaintiff could exercise the option to purchase, thereby eliminating any possibility of redemption. But this is impossible under the terms of the agreements because the option would, necessarily, have to have been exercised *before* the initiation of foreclosure proceedings, before an actual, as opposed to contingent, obligation came into being. Had plaintiff never exercised the option, there was no possibility that defendants would have owed plaintiff money, and, therefore, plaintiff would have had no right to foreclose. It is only where plaintiff exercises the option to purchase that the possibility defendants would be obligated to repay plaintiff's option price arises, and then, necessarily, plaintiff could not *again* exercise the option after foreclosure proceedings had begun.

In other words, we do not here have a case of a mortgage agreement with a lurking option to purchase, whereby the mortgagee may swoop in and exercise the option following the commencement of foreclosure proceedings. Rather, we have an option to purchase with a lurking mortgage. If plaintiff exercises the option to purchase and defendants are unable to deliver title, a financial obligation, secured by the mortgage, comes into being. Plaintiff could foreclose on this mortgage, but plaintiff would be unable to then exercise the option, because the option was, necessarily, already exercised.

That being said, we would caution that this holding in no way diminishes Michigan's policy against the clogging of the equity of redemption. The law against clogging stands as strong as before. However, this

case does reflect that the courts will look to the substance of an agreement rather than simply to the titles of the documents involved. While this case does involve a mortgage executed contemporaneously with an option to purchase, because the equity of redemption of the mortgagor was in no way impinged upon, there is no clogging. As such, the law against clogging has no application.

Additionally, we would note that we are not troubled by the equities of this particular case. The doctrine against clogging is designed to protect the necessitous mortgagor from sacrificing his right of redemption as an incident of obtaining a loan. *Humble Oil, supra*, p 547. Here, there was no loan; there was an option to purchase. This doctrine is not meant to protect landowners who, after selling an option to purchase their property, "elect" not to be bound by the option because of changing market conditions.

In summary, we conclude that the trial court erred in concluding that the option was the functional equivalent of a loan. The parties executed an option to purchase real property, which was secured by a mortgage on the property. This mortgage secured a contingent obligation that was anticipated in the option whereby defendants would become liable to refund plaintiff its option price. Because of the manner in which the transaction was structured, there never, at any time, existed the possibility that plaintiff could clog defendants' right of redemption, should defendants become obligated under the terms of the option and should plaintiff foreclose on the mortgage. Thus, defendants' right of redemption never having been clogged, the circuit court erred as a matter of law in concluding that the doctrine against clogging

precluded enforcement of the option. We, therefore, reverse.

IV

Because we find that the court erred in granting defendants' motion for summary disposition, we also conclude that the court erred in reaching the issue of damages. For the sake of clarity, we specify that the provision of the order awarding defendants damages is also reversed.

Reversed.