*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WOODLAND CONDOMINIUMS
HOMEOWNERS ASSOCIATION, INC,

      Plaintiff/Counterdefendant-
Appellee,

v

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, also known as FANNIE MAE,

      Defendant-Appellant,

and

DITECH FINANCIAL, LLC,

      Defendant/Counterplaintiff/Cross-
Plaintiff-Appellant,

and

FUTURE HOLDINGS, LLC,

      Defendant/Cross-Defendant,

and

MARY ANN WUJCIAK,

      Defendant.

UNPUBLISHED
February 28, 2019

No. 339850
Genesee Circuit Court
LC No. 16-107570-CH

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendants Federal National Mortgage Association ("Fannie Mae") and Ditech Financial, LLC ("Ditech"), formerly known as Green Tree Servicing, LLC, appeal by leave granted the trial court's order denying their motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). We reverse and remand for entry of summary disposition in favor of defendants.

## I. FACTS AND PROCEEDINGS

Plaintiff is the homeowners association for the Woodland condominium development. Mary Ann Wujciak owned a condominium unit in the development. At all times relevant to these proceedings, Ditech was the servicer of a mortgage owned by Fannie Mae that secured a purchase money loan for the unit. The development was insured by a master policy issued by Farm Bureau General Insurance Company to plaintiff covering the standard condominium unit for fire and other damage. The Farm Bureau master policy identified plaintiff and Ditech as parties with an insurable interest in Wujciak's unit.

The mortgage contract between Ditech and Wujciak contained the following provision addressing insurance proceeds:

> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. *Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.* During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. *If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.* Such insurance proceeds shall be applied in the order provided for in Section 2. [Emphasis added.]

Plaintiff's bylaws, Article V, Sections 4, 5, and 8, state:

> Section 4. ASSOCIATION RESPONSIBILITY FOR REPAIR. Except as otherwise provided in the Master Deed and in Section 3 hereof, the Association shall be responsible for the reconstruction, repair and maintenance of the Common Elements. Immediately after a casualty causing damage to property for

which the Association has the responsibility of maintenance, repair and reconstruction, the Association shall obtain reliable and detailed estimates of the cost to replace the damaged property in a condition as good as that existing before the damage. *If the proceeds of insurance are not sufficient to defray the estimated costs of reconstruction or repair required to be performed by the Association,* or if at any time during such reconstruction or repair, or upon completion of such reconstruction or repair, *the funds for the payment of the costs thereof are insufficient, assessment shall be made against all Co-owners for the cost of reconstruction or repair of the damaged property in sufficient amounts to provide funds to pay the estimated or actual cost of repair.* [Emphasis added.]

Section 5. TIMELY RECONSTRUCTION AND REPAIR. If damage to Common Elements or a Unit adversely affects the appearance of the Project, the Association or Co-owner responsible for the reconstruction, repair and maintenance thereof shall proceed with replacement of the damaged property without delay, and shall complete such replacement within 6 months after the date of occurrence which caused damage to the property.

\* \* \*

Section 8. PRIORITY OF MORTGAGEE INTERESTS. Nothing contained in the Condominium Documents shall be construed to give a Condominium Unit Owner, or any other party, *priority over any rights of first mortgagees of Condominium Units pursuant to their mortgages in the case of a distribution to Condominium Unit Owners of insurance proceeds* or condemnation awards for losses to or a taking of Condominium Units . . . . [Emphasis added.]

On December 7, 2014, the subject unit was destroyed by a fire. Plaintiff obtained from J.C. Chappell Construction ("Chappell") a quote of $141,000 for the cost of restoring the property. Plaintiff submitted to Farm Bureau a proof of claim. Plaintiff entered into a restoration agreement with Chappell. On April 14, 2015, Farm Bureau issued a check for $87,900, jointly payable to Ditech and plaintiff. Plaintiff's agent, Anna Bincsik-Hawker, endorsed the check on plaintiff's behalf without restriction and delivered the check to Ditech. Ditech deposited the funds into an escrow account pending receipt of further information regarding plaintiff's claim. On July 27, 2015, Ditech issued a check in the amount of $43,950, payable to Wujciak, Chappell, and plaintiff, but the check was returned as undeliverable because Wujciak's address was unknown.

In the meantime, Wujciak failed to make timely payments under her mortgage. A balance of $106,469.91 remained due on Wujciak's mortgage debt. Without informing plaintiff, Ditech decided that restoration of the unit was not feasible because the insurance proceeds were insufficient. Ditech initiated foreclosure by sheriff's sale in December 2016. The proceeds from the sheriff's sale and the insurance payment satisfied Wujciak's mortgage debt in full.

Plaintiff thereafter brought this action against defendants for statutory and common-law conversion, breach of contract, and assumpsit. These claims were based on plaintiff's theory that

Ditech's original plan to apply the insurance proceeds to restoration precluded Ditech from subsequently abandoning that plan on the ground that restoration was not feasible. Ditech brought a countercomplaint for a declaratory judgment. Plaintiff moved for summary disposition of Ditech's counterclaim. Defendants also moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that restoration was not feasible because the insurance proceeds were insufficient to cover the restoration costs. The trial court jointly heard both motions and thereafter issued an opinion and order denying both motions on the basis that there were questions of fact precluding summary disposition in favor of either party. However, the court did not identify the question or questions that it found to be in dispute.

## II. SUMMARY DISPOSITION ANALYSIS

### A. PROCEDURAL GROUND

Preliminarily, we reject defendants' unpreserved argument that procedural deficiencies in plaintiff's response to defendants' summary disposition motion entitled defendants to summary disposition as a matter of law.

Defendants filed their motion for summary disposition shortly after plaintiff filed its own motion for summary disposition under MCR 2.116(C)(10). Plaintiff's brief in response to defendants' motion simply referenced plaintiff's own motion and supporting brief, and the exhibits submitted with plaintiff's motion, to oppose defendants' motion for summary disposition. Defendants argue that plaintiff's response to their motion was procedurally deficient, entitling them to summary disposition as a matter of law. We disagree. We review de novo issues involving the interpretation and application of court rules. *Lech v Huntmore Estates Condo Ass'n*, 315 Mich App 288, 290; 890 NW2d 378 (2016).

When a party files a motion for summary disposition under MCR 2.116(C)(10), "[t]he moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence." *Lockwood v Ellington Twp*, 323 Mich App 392, 401; 917 NW2d 413 (2018) (quotation marks and citation omitted). Once that burden is satisfied, "the party opposing summary disposition under MCR 2.116(C)(10) may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. (quotation marks and citation omitted). Defendants argue that the trial court should have granted their motion for summary disposition because plaintiff failed to submit a properly supported response. Defendants rely on MCR 2.116(G), which provides, in pertinent part:

(3) Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required

(a) when the grounds asserted do not appear on the face of the pleadings, or

(b) when judgment is sought based on subrule (C)(10).

(4) A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material

fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

Defendants argue that plaintiff failed to satisfy the requirements of subparagraph (G)(4) by filing a response that merely referenced plaintiff's own motion for summary disposition. Defendants also argue that plaintiff failed to satisfy MCR 2.119(A)(2), which provides that "[a] motion or response to a motion that presents an issue of law must be accompanied by a brief citing the authority on which it is based." Defendants further argue that plaintiff's attempt to incorporate by reference its brief in support of its own motion for summary disposition was ineffective pursuant to MCR 2.113(G), which provides that "[s]tatements in a pleading may be adopted by reference only in another part of the same pleading."

A motion for summary disposition brought under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint," and "should be granted when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Lockwood*, 323 Mich App at 400 (quotation marks and citation omitted). Even accepting that plaintiff's response to defendants' motion could be considered procedurally deficient because, standing alone, it did not properly set forth the factual support for plaintiff's opposition to defendant's motion, we are not persuaded that this deficiency entitled defendants to summary disposition as a matter of law under the circumstances of this case.

Defendants and plaintiff had filed competing motions for summary disposition. The motions involved the same legal and factual issues. The trial court had discretion to hear and decide the motions at the same time, cf. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013), which it did. Moreover, a court hearing a summary disposition motion may sua sponte render judgment in favor of the opposing party if it determines that the opposing party is entitled to judgment. MCR 2.116(I)(2). Thus, regardless of whether plaintiff failed to adhere to the formalities for responding to a motion by failing to file an entirely separate brief in response to defendants' motion, the trial court was still permitted to consider plaintiff's cross-motion for summary disposition, as well as that motion's supporting brief and exhibits, in determining whether plaintiff or defendants were entitled to judgment as a matter of law.

Defendants' reliance on *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362; 775 NW2d 618 (2009), is misplaced. In that case, this Court recognized that a trial court does not have a duty "to *independently* consider *all* the evidence contained in the court record" before granting a motion for summary disposition. *Id*. at 375-376. In this case, plaintiff did not invite the trial court to conduct its own review of the record to determine if the evidence supported finding that there was a genuine issue of material fact that precluded judgment for defendants. Rather, plaintiff referenced the supportive evidence it submitted in support of its own motion for summary disposition, which was properly before the court at the time it considered and decided defendants' cross-motion for summary disposition. Accordingly, defendants are not entitled to relief on this basis. See *id.* at 377 ("[I]f a party refers to and relies

on an affidavit, pleading, deposition, admission, or other documentary evidence, and that evidence is 'then filed in the action or submitted by the parties,' the trial court must consider it.").

## B. SUBSTANTIVE MERITS OF PLAINTIFF'S CLAIMS

Defendants argue that the trial court erred by finding that genuine issues of material fact precluded summary disposition in their favor with respect to each of plaintiff's claims. We agree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Lockwood*, 323 Mich App at 400. When reviewing a motion under MCR 2.116(C)(10), the court must consider all of the admissible evidence in a light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). "However, the party opposing summary disposition under MCR 2.116(C)(10) may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Lockwood*, 323 Mich App at 401 (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.* (quotation marks and citation omitted). A motion brought under MCR 2.116(C)(10) is properly "granted when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 400 (quotation marks and citation omitted).

Additionally, questions concerning the proper interpretation of a contract are questions of law that we review de novo. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

## 1. CONVERSION

The civil tort of conversion is defined as "any distinct act of domain wrongfully exerted over another's property in denial of or inconsistent with the rights therein." *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 591; 683 NW2d 233 (2004) (citation omitted). Statutory conversion requires an additional showing that the defendant "employed the converted property for some purpose personal to the defendant's interests." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 358-359; 871 NW2d 136 (2015); see also MCL 600.2919a.

"To support an action for conversion of money, the defendant must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship and must have had an obligation to return the specific money entrusted to his care." *Lawsuit Fin*, 261 Mich App at 591 (quotation marks and citation omitted). Defendants argue that they cannot be liable for conversion because Ditech was entitled to retain the insurance proceeds pursuant to the mortgage contract and plaintiff's bylaws. "In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Id.*

The plain language of the mortgage contract unambiguously imposes on Ditech the requirement to apply the proceeds of the property insurance to restoration or repair of the subject unit, (1) *if* the restoration or repair is economically feasible, and (2) *if* Ditech's security is not lessened. The plain language of plaintiff's bylaws provides that the bylaws cannot take priority over the rights of Ditech, as first mortgagee, pursuant to the mortgage contract. It is not disputed that the cost of restoration of the subject unit was $141,000, or that Farm Bureau's insurance payout was $87,900. That left $53,100 unpaid on the restoration contract. Together with the $12,000 paid for demolition, that left a net unpaid balance of $41,100 unpaid. These figures support Ditech's determination that restoration was not feasible because Ditech would be required to pay approximately one-third of the cost of restoration merely to return the subject unit to its status quo ante as security for the loan. Thus, Ditech's security interest would be lessened.

Plaintiff argues that Ditech originally pursued a plan of restoration but abandoned that course without informing plaintiff of its changed decision, and that this conduct should preclude Ditech from contending that restoration was not feasible. Even if plaintiff's frustration with the events is understandable, the circumstances here do not provide a legal basis for concluding that Ditech had no right to apply the insurance proceeds to Wujciak's unpaid loan balance. The mortgage contract did not require Ditech to give plaintiff notice or to consult with plaintiff before applying the proceeds to Wujciak's debt. The mortgage contract did not prohibit Ditech from effectively rescinding the $43,950 check after it failed in its efforts to deliver the check to Wujciak for her endorsement.

Plaintiff also asserts that there is a question of fact regarding the feasibility of restoration because the $87,900 payment would be supplemented by the insurance payments for debris removal and depreciation, and by plaintiff's $30,000 contribution. Plaintiff asserts that the $144,000 sum of the $87,900 payment, its own $30,000 expenditure, the $12,000 insurance payment for demolition and debris removal, and the depreciation check for $14,100, was sufficient to pay Chappell's $141,000 total cost. However, the notation in Farm Bureau's record that plaintiff "had to use" $30,000 from its own savings account because Ditech "has not released any funds" indicates that plaintiff was not contributing part of the cost to supplement the insurance deficiency, but instead acting on the expectation that it would eventually receive payment from Ditech. There is no evidence that plaintiff attempted to negotiate a shared cost arrangement with Ditech. Under these circumstances, plaintiff cannot establish a question of fact whether Ditech should have known that restoration was feasible despite the substantial difference between the insurance proceeds and restoration costs.

Plaintiff also argues that defendants are estopped from claiming that reconstruction was not feasible because defendants originally agreed to reconstruction by issuing the check for $43,950 payable to Chappell, Wujciak, and plaintiff. "Estoppel arises where a party, by representations, admissions or silence, intentionally or negligently induces another party to believe facts, and the other party justifiably relies and acts on this belief, and will be prejudiced if the first party is permitted to deny the existence of the facts." *Wigfall v Detroit*, 322 Mich App 36, 43; 910 NW2d 730 (2017). Defendants did not misrepresent facts related to the feasibility of reconstruction. Plaintiff and defendants had access to the same facts concerning Chappell's estimate and Farm Bureau's resolution of the claim. The response to an e-mail in August 2016, from Farm Bureau's claims specialist, Thomas Nault, to plaintiff's board member, Jacqueline

-7-

Gutierrez, showed that plaintiff expected payment in addition to the $87,900 and smaller payments already received, contrary to the adjuster's report issued on July 6, 2015. Defendant, however, was not responsible for plaintiff's misunderstanding.

Accordingly, the trial court erred by denying defendants' motion for summary disposition with respect to plaintiff's claims for conversion.

## 2. BREACH OF CONTRACT

To prevail on a claim for breach of contract, a plaintiff must prove the following elements: "(1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Id*. at 101 (quotation marks and citation omitted).

Defendants assert that they were entitled to summary disposition on plaintiff's claim for breach of contract because there was no evidence of a contract between plaintiff and defendants. We agree.

Plaintiff addresses this argument indirectly, by stating that Ditech "breached the contract implied by the mortgage by applying the proceeds of Woodland's insurance to Wujciak's loan." Plaintiff does not identify any transaction, document, or communication in which plaintiff and Ditech entered into a contract. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845, 854 (1998) (quotation marks and citation omitted).

Here, plaintiff was not a party to the mortgage contract between defendants and Wujciak. Plaintiff claims that the mortgage contract language did not give Ditech discretion on whether to apply the insurance proceeds, but plaintiff does not claim status as a third-party beneficiary to the contract. Plaintiff and Ditech were parties to the insurance policy as insureds, but the policy does not govern application of proceeds toward repair cost and debt satisfaction.

For these reasons, the trial court erred by denying defendants' motion for summary disposition with respect to plaintiff's claim for breach of contract.[1]

---

[1] In light of our decision on this issue, it is unnecessary to address defendants' additional argument that any oral contract would have been unenforceable under the statute of frauds, MCL 566.132.

## 3. ASSUMPSIT

Defendants argue that they were entitled to summary disposition of plaintiff's claim for assumpsit because assumpsit has been abolished as a form of action. In *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 564; 837 N W2d 244 (2013), our Supreme Court recognized that "assumpsit as a form of action was abolished" with the adoption of the General Court Rules in 1963. The Court further stated, however, that "notwithstanding the abolition of assumpsit, the substantive remedies traditionally available under assumpsit were preserved." *Id*. Consequently, plaintiff's use of the term "assumpsit" in labeling its claim does not warrant dismissal if plaintiff otherwise substantively pleaded a valid claim. See also *Adams v Adam (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007) ("It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim.").

Plaintiff alleged in Count III that (1) it was the owner of the insurance proceeds with the right to immediate possession of the funds for restoration costs; (2) defendants were holding the funds; and (3) defendants were unjustly enriched by exercising dominion over the funds. In substance, this claim was a reiteration of plaintiff's conversion claim. This is a valid theory of relief, but as already addressed, there is no evidentiary support for plaintiff's claim that defendants were not entitled to apply the funds to satisfy the mortgage debt. Accordingly, the trial court should have granted defendants' motion for summary disposition with respect to this claim.

## III. CONCLUSION

All of plaintiff's claims against defendants lacked evidentiary support because the mortgage contract authorized defendants to apply the insurance proceeds toward satisfaction of Wujciak's mortgage debt if restoration and repair of the property was not feasible. There was no genuine issue of material fact that restoration was not feasible because the insurance proceeds were insufficient to pay the restoration cost of $141,000. The trial court therefore erred by denying defendants' motion for summary disposition on plaintiff's claims. This matter is remanded for entry of an order granting defendants' motion for summary disposition.

Reversed and remanded for entry of an order granting summary disposition in favor of defendants, as to plaintiff's claims. We do not retain jurisdiction. Defendants, as the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola