STATE BAR GRIEVANCE ADMINISTRATOR v VAN DUZER

1. MORTGAGES—CONVEYANCE—DEEDS—EQUITABLE MORTGAGE.

   A conveyance of an interest in real estate to secure the performance of an obligation is a mortgage and the deeds given by a client and his wife to an attorney, although absolute in form, did not convey fee simple title where the attorney represented to the client that it was a borrower-lender situation and as to third parties that the attorney was the purchaser; the transaction was what is known as an equitable mortgage and it vested the grantee-mortgagee with the right to bring an action of foreclosure in the event that the obligation of the grantor-mortgagor was not performed.

2. ATTORNEY AND CLIENT—ATTORNEY FEES—MORTGAGES—EQUITABLE MORTGAGE—RECONVEYANCE.

   An attorney is entitled to be compensated for his professional employment, but he has no right, legal, equitable, moral, or ethical to refuse to reconvey property to his client upon payment of such fees and repayment of funds advanced, plus interest as agreed upon where the attorney held the property as an equitable mortgagee.

3. MORTGAGES—ATTORNEY AND CLIENT—ACCOUNTING.

   An attorney should be disabused of any notion that he holds property as an owner, subject only to defeasance upon repayment and reconveyance where he is a mortgagee in possession by virtue of which, as well as the attorney and client relationship, he is obliged to account for all receipts and disbursements to his client, the owner and the mortgagor.

REFERENCES FOR POINTS IN HEADNOTES

[1] 55 Am Jur 2d, Mortgages §§ 11, 12, 554.

[2, 3] 7 Am Jur 2d, Attorneys at Law §§ 97, 160.

Duties, rights, and remedies between attorney and client where attorney purchases property of client at or through tax, execution, or judicial sale, 20 ALR2d 1280.

[4] 7 Am Jur 2d, Attorneys at Law § 95.

[5] 7 Am Jur 2d, Attorneys at Law §§ 66, 67.

Degree or quantum of proof necessary to justify disbarment or suspension of attorney, 105 ALR 984.

4. ATTORNEY AND CLIENT—PRESUMPTIONS—SUPREME COURT.

Michigan Supreme Court will not presume that an attorney will not discharge his professional and ethical obligations.

5. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—STATE BAR GRIEVANCE BOARD—ACCOUNTING—DISMISSAL AND NONSUIT.

Grievance proceedings against an attorney will be remanded to the State Bar Grievance Board, and upon satisfactory evidence submitted to the Board that the attorney has accounted to his client for moneys received and expended to date, the complaint will be dismissed.

Appeal from State Bar Grievance Board. Submitted September 4, 1973. (No. 5 September Term 1973, Docket No. 54,505.) Decided December 18, 1973.

Disciplinary proceedings against William H. Van Duzer. Order entered suspending respondent from practicing law for 100 days. Respondent appeals. Remanded to State Bar Grievance Board.

*Grant J. Gruel,* for State Bar Grievance Board.

*Foster, Lindemer, Swift & Collins,* for respondent.

T. E. BRENNAN, J.

### THE CASE

This is an appeal by an attorney from an order of the State Bar Grievance Board, suspending him from the practice of law for a period of 100 days.

### THE FACTS

The facts were found by the hearing panel which heard the testimony. The report of the hearing panel was adopted by the Grievance

Board. The findings of fact in the panel's report
are as follows:

"Findings of Fact

"The Panel finds that Commercial and Industrial
Builders, Inc. was a Michigan corporation located in
Lansing, Michigan and that Stanley Stelmashenko was
the sole stockholder and president of the corporation.
(The corporation and Mr. Stelmashenko are hereinafter
referred to as 'Stelmashenko'). Mr. Wyble, a partner of
the law firm with which William H. Van Duzer later
became associated, organized the company for Stel-
mashenko. Stelmashenko had acquired real estate in
Haslett, Michigan on which he planned to develop a
complex consisting of 24 family apartments. To finance
the construction of the apartment complex, Stelmash-
enko obtained a construction loan from the Bank of
Lansing in the amount of $225,000, and a real estate
mortgage was given by the corporation to secure said
loan. Subsequently, the Bank of Lansing advanced addi-
tional sums of $30,000, a portion of which was used to
cure a default on the original mortgage. It appears that
the complex was not substantially completed until early
summer of 1969, some six months later than planned.
At that time, some minor work had yet to be done,
which Stelmashenko contemplated doing himself. It
further appears that although occupancy of the com-
plex began some time in June of 1969, the level of
occupancy needed to service the construction loans was
not reached until late August or September of 1969, by
which time Stelmashenko was again in default under
the mortgage. By reason of the continuing default,
together with the unbusinesslike manner in which Stel-
mashenko was allegedly operating the complex, the
Bank of Lansing instituted foreclosure proceedings on
August 6, 1969, with a date for sale fixed for October
31, 1969.

"During the pendency of the foreclosure proceedings,
the Bank of Lansing, on October 15, 1969, also insti-
tuted suit against Commercial and Industrial Builders,
Inc. in the Circuit Court for the County of Ingham,
State of Michigan, File No. 10750-C, seeking the ap-

pointment of a receiver on the basis of waste allegedly committed by the defendant. William H. Van Duzer and his partner, George Tesseris, represented the defendant in the receivership action. Although the matter was heard before the Honorable Sam Street Hughes on October 24, 1969, there was no disposition of the matter and on October 30, 1969, the Honorable Sam Street Hughes disqualified himself indicating that there might be further hearings in the matter. A notice of dismissal was filed by counsel representing the Bank of Lansing on March 5, 1970, said date being more than 4 months after Van Duzer acquired title. At the hearing for the appointment of a receiver, Mr. Van Duzer, among other things, argued as follows:

" 'An essential ingredient of any waste provision, and this is a very tough clause, is that they have got to submit proofs that they are insecure and that the acts of the defendant are such that make them insecure and that they are going to be financially hurt. Now, there is no way in the world with a $100,000 equity in this thing, are they going to be able to show that within a margin of accuracy.'

"Following the hearing of October 24, 1969, Stelmashenko again came in to see Mr. Van Duzer, informing him that Stelmashenko was unable to raise sufficient funds to avoid the foreclosure sale. After confirming with the bank its unwillingness to delay or avert the sale scheduled for October 31, 1969 on any basis other than payment in full of the entire amount in default under the mortgage, the possibility of Mr. Van Duzer's law firm investing funds in an amount sufficient to satisfy the Bank of Lansing was raised. Stelmashenko and three of the individual partners of the law firm discussed an arrangement whereby the involved partners of the law firm would raise sufficient funds to satisfy the Bank of Lansing and enter into an agreement with Stelmashenko. The agreement was to provide, among other things, that Stelmashenko would have a period of two years during which to reacquire the premises. On the day before the foreclosure sale, the parties had extensive meetings and the agreement and arrangement between Stelmashenko and the involved law partners was finalized. Late in the day,

Stelmashenko was asked to produce Mrs. Stelmashenko at the offices of the law firm and the Stelmashenkos were then presented for the first time with the necessity of executing deeds. A warranty deed by Commercial and Industrial Builders, Inc. was executed in favor of William H. Van Duzer, George Tesseris and Edgar L. Church under date of October 30, 1969. This deed recited consideration in the amount of $254,865, and executed by Mr. and Mrs. Stelmashenko as president and secretary of the corporation. A quit-claim deed was executed by Stanley Stelmashenko and Lauma Stelmashenko, husband and wife, and was given to William H. Van Duzer, George Tesseris and Edgar L. Church, reciting consideration in the amount of $1.00. Both deeds were subsequently recorded in the office of the Register of Deeds, Ingham County, Michigan on December 3, 1969. Although no document purporting to embody the terms under which Stelmashenko could reacquire title to the premises was signed by Stelmashenko at this time, Mr. Van Duzer took steps necessary to avert the foreclosure sale and to confirm title in the names of himself and his partners. An agreement between Commercial and Industrial Builders, Inc., a Michigan corporation, referred to as 'seller', and William H. Van Duzer, George Tesseris and Edgar Lee Church, referred to as 'purchasers' was presented to Stelmashenko for execution on October 30, 1969. This agreement was not executed by Stelmashenko for the reason that it contained blank spaces for later insertion of dollar figures and for other reasons. It was agreed that Mr. Van Duzer would prepare another agreement reflecting the precise agreement between the parties.

"Subsequent to October 30, 1969, there were several attempts by Stelmashenko to obtain an agreement. Van Duzer claimed inability to get exact figures from the Bank of Lansing until late December of 1969, and it appears further that there was uncertainty with respect to an exact accounting of the attorney fees owed the law firm for past services, which were in the approximate amount of $3,500.00. Stelmashenko remained in management of the complex for a short period of time, but was removed following further disputes between the parties over developments which occurred at the com-

plex involving repairs, complaints by tenants and other difficulties. In January of 1970, a second agreement was prepared by Mr. Van Duzer which differed in material respects from the proposed first agreement. The revised agreement contained provisions for repayment of sums of money disbursed to the bank, charged attorney fees and numerous other claimed expenses, and provided for a substantial change in the division of the profits between the attorneys and Stelmashenko. These and other provisions were controverted by Mr. Stelmashenko as being contrary to his understanding of the agreement which was reached by the parties on October 30, 1969, and he again refused to sign. By reason of the controversy between Stelmashenko and the law partners, no agreement was ever executed. In this situation, Stelmashenko retained other counsel and litigation was instituted by him in the Circuit Court for the County of Clinton and State of Michigan against Mr. Van Duzer and his law partners which is still pending. It appears further that Stelmashenko endeavored to obtain a warrant for criminal proceedings against Mr. Van Duzer and his law partners, or one of them, to be issued by the prosecuting attorney of Clinton County, and upon refusal of the prosecuting attorney so to do, a suit was filed in the Federal Court to compel the issuance of a warrant. This action is likewise pending. In the meantime, the period orally agreed upon for reacquisition of the property by Mr. Stelmashenko has expired, and title to the premises is now held by Mr. Van Duzer and his partners."

The Grievance Board concluded that Van Duzer was guilty of violation of several provisions of the former Canons of Professional Ethics. Specifically, the Board found that Van Duzer had purchased an interest in the subject matter of litigation he was conducting, in violation of Canon 10; had abused the confidence reposed in him by a client for personal benefit or gain, contrary to Canon 11; had engaged in conduct exposing the profession to obloquy, and contrary to justice ethics, honesty

and morals, in violation of Rule 14 of the Rules governing the State Bar.

## DISCUSSION

If it were true, as found by the hearing panel, and confirmed by the Grievance Board, that,

"[i]n the meantime, the period orally agreed upon for reacquisition of the property by Mr. Stelmashenko has expired, and title to the premises is now held by Mr. Van Duzer and his partners",

then it would follow that the discipline imposed is proper and justified.

Unfortunately, there is a simple rule of hornbook law that seems to have been overlooked by all the parties involved in this case.

A conveyance of an interest in real estate to secure the performance of an obligation is a mortgage.

Van Duzer testified before the hearing panel as follows:

"*A*. As to Mr. Stelmashenko, I always represented to him that it was a borrower-lender situation, and as to third parties, the world, I was the purchaser."

It follows that the deeds given by Stelmashenkos to Van Duzer, although absolute in form, did not convey fee simple title. They conveyed merely a mortgagee's interest. 16 Michigan Law & Practice, Mortgages, § 31 *et seq.,* p 329.

The transaction was what is known as an equitable mortgage. It vested the grantee-mortgagee with the right to bring an action for foreclosure in the event that the obligation of the grantor-mortgagor was not performed.

It is true that the transaction had the external

appearance of a conveyance, and that, because of the rules of law protecting bona fide purchasers for value, Van Duzer and his associates were in a position to convey the premises to a third party, whose title, in the absence of actual notice of the interest of Stelmashenko, would be valid as against the latter. In such case, of course, the proceeds of the sale would be held by Van Duzer as agent for Stelmashenko. We have no right to assume at this juncture that Van Duzer would, in such case, convert his client's money to his own use.

It is clear that Van Duzer did not regard himself as the owner of the apartment building and did not intend to become the owner.

"*A.* Counsel, if I ever felt that he would not end up owning this property, there is no way in the world that I would have gone through with it. * * *

"*A.* I knew that he had advertised it for sale, and he was kind of sheepish about it.

"I said, 'Stan, if you can sell it and get your money out, fine.' I didn't know he wanted to sell it.

"I always thought he wanted to keep it, so I was surprised, but when he had listed it for sale, this realtor friend by the name of Jim Walter was real surprised that my property was listed for sale because he said, 'Bill, I do all of your real estate work,' and he said, 'I send you stuff, and now that is the way you treat me.'

"I said, 'Look, this is not my property, Jim. I can't offer it for sale,' and so I told him about the whole deal that we were holding the deed and so on and so forth, so he came back to me about a week later. He had gone out and looked at it without my knowledge or consent or instruction or anything, and he came back and he said, 'Bill, will your client take $5000 to wash out the deal?' and he went through some figures to show how he could sell it for around $310,000 and get his realtor's commission out and pay us off and the bank off and

Stan would get $5000, so I said, 'Stan, would you wash
your interest out for $5000?'

"He said, 'No,' and that was it."

There is some evidence, however, that Van
Duzer, in company with counsel for the Grievance
Board, was laboring under the misapprehension
that, through mere passage of time, his second
mortgage interest has become a fee simple owner-
ship. Thus,

"*Q.* Would you be willing to let him redeem today on
the basis of the terms set forth in Exhibit 6 and Exhibit
7?

"*A.* With reservations, yes.
"*Q.* Such as what?
"*A.* I put a hell of a lot of work into this, Counsel,
and I want some pay for my time."

Certainly, the appellant is entitled to be com-
pensated for his professional employment, but he
has no right, legal, equitable, moral, or ethical to
refuse to reconvey the property to his client upon
payment of such fees and repayment of funds
advanced, plus interest as agreed upon.

Appellant should also be disabused of any notion
that he holds the property as an owner, subject
only to defeasance upon repayment and reconvey-
ance. He is a mortgagee in possession by virtue of
which, as well as the attorney and client relation-
ship, he is obligated to account for all receipts and
disbursements to his client, the owner and mortga-
gor.

We will not presume that the appellant will not
discharge his professional and ethical obligations.

The matter will be remanded to the Grievance
Board, and upon satisfactory evidence submitted to
the Board that the appellant has accounted to his

client for moneys received and expended to date, the complaint will be dismissed.

Further, being of the view that the appellant bears the major responsibility for the necessity of these proceedings, costs will be assessed against him both here and below.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, WILLIAMS, LEVIN, and M. S. COLEMAN, JJ., concurred with T. E. BRENNAN, J.