# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* $55,336.17 SURPLUS FUNDS.

FOR PUBLICATION
May 9, 2017
9:05 a.m.

---

ROBERT E. PARKER, Personal Representative of
the ESTATE OF KATHRYN KROTH,

      Appellant,

v

PNC BANK, NA,

      Appellee.

No. 331880
Livingston Circuit Court
LC No. 15-028738-CH

---

Before: GADOLA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

Appellant, Robert E. Parker, as personal representative for the estate of decedent Kathryn Kroth, appeals as of right an order granting appellee, PNC Bank, NA ("PNC") the surplus funds remaining after a foreclosure sale of decedent's property. We affirm.

In this case of first impression, we are called upon to interpret and apply the language of MCL 600.3252, a subsection of Chapter 32 of the Revised Judicature Act of 1961 ("RJA"), MCL 600.3201 *et seq*., which governs the distribution of surplus funds after a mortgage foreclosure by advertisement.

The facts of this case are not in dispute. In March, 2003, decedent and her husband, Thomas Kroth, granted National City Mortgage Services Co. a mortgage on real property located in Brighton, Michigan ("the property"). In February, 2008, the Kroths executed a second mortgage on the property in favor of National City Bank. After a series of mergers, PNC came to hold both mortgages as successor-in-interest. Thomas predeceased Kathryn by nine months and Kathryn died in December, 2014. Following default, PNC initiated foreclosure of the property under the first mortgage by advertisement proceedings. The property was purchased at a September 2, 2015 sheriff's sale by a third party for an amount sufficient to satisfy the first mortgage and create a surplus of $55,336.17.

-1-

A month after the sale, PNC filed a verified claim for the surplus proceeds in the circuit court as holder of the junior mortgage, still worth $119,538.40, and the surplus amounts were thereafter deposited with the court pursuant to MCL 600.3252, which provides:

> If after any sale of real estate, made as herein prescribed, there shall remain in the hands of the officer or other person making the sale, any surplus money after satisfying the mortgage on which the real estate was sold, and payment of the costs and expenses of the foreclosure and sale, the surplus shall be paid over by the officer or other person on demand, to the mortgagor, his legal representatives or assigns, unless at the time of the sale, or before the surplus shall be so paid over, some claimant or claimants, shall file with the person so making the sale, a claim or claims, in writing, duly verified by the oath of the claimant, his agent, or attorney, that the claimant has a subsequent mortgage or lien encumbering the real estate, or some part thereof, and stating the amount thereof unpaid, setting forth the facts and nature of the same, in which case the person so making the sale, shall forthwith upon receiving the claim, pay the surplus to, and file the written claim with the clerk of the circuit court of the county in which the sale is so made; and thereupon any person or persons interested in the surplus, may apply to the court for an order to take proofs of the facts and circumstances contained in the claim or claims so filed. Thereafter, the court shall summon the claimant or claimants, party, or parties interested in the surplus, to appear before him at a time and place to be by him named, and attend the taking of the proof, and the claimant or claimants or party interested who shall appear may examine witnesses and produce such proof as they or either of them may see fit, and the court shall thereupon make an order in the premises directing the disposition of the surplus moneys or payment thereof in accordance with the rights of the claimant or claimants or persons interested.

In December, 2015, appellant filed a notice of claim in the circuit court for the surplus proceeds as a person interested. PNC subsequently moved for disbursement of the surplus proceeds in its favor and appellant objected. Appellant argued that nothing in MCL 600.3252 established a senior interest in PNC as a junior mortgagee. To the contrary, appellant suggested that PNC's junior lien had been extinguished upon foreclosure of the first mortgage, rendering PNC "just a creditor" without a remaining security interest in the property. Appellant asked the circuit court to distribute the surplus proceeds in accordance with the Estates and Protected Individuals Code ("EPIC"), MCL 700.1101 *et seq.* At a March 1, 2016 hearing on PNC's motion, the circuit court considered the language of MCL 600.3252, concluding that the statute's explicit mention of subsequent mortgagees directly contradicted appellant's claim that PNC was not entitled to priority because PNC's interests as junior mortgagee had been extinguished, and instead indicated intent to prioritize the claims of junior mortgagees over the original mortgagor. The circuit court ordered the release of surplus proceeds to PNC.

Appellant takes issue with the trial court's interpretation of MCL 600.3252, arguing that PNC was not entitled to priority under MCL 600.3252 because its security interest in the property as junior mortgagee was extinguished on the date of the foreclosure sale. Further, appellant suggests that neither the statute itself nor relevant case law explicitly guides the trial court in its determination of priority and asks this court to consider the question of priority as a

matter of first impression. We agree that this is a matter of first impression, but find that the circuit court correctly interpreted MCL 600.3252 as prioritizing the interest of a junior mortgagee over a mortgagor.

This Court reviews do novo questions of statutory interpretation. *Rock v Crocker*, 499 Mich 247, 260; 884 NW2d 227 (2016). Our primary goal in statutory interpretation is to reasonably infer the legislative intent as evidenced by the statutory language. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 157; 802 NW2d 281 (2011). "If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). "[I]f the intent of the Legislature is not clear, courts must interpret statutes in a way that gives effect to every word, phrase, and clause in a statute and 'avoid an interpretation that would render any part of the statute surplusage or nugatory.' " *Haynes v Village of Beulah*, 308 Mich App 465, 468; 865 NW2d 923 (2014) (citation omitted). "Words and phrases used in a statute should be read in context with the entire act and assigned such meanings as to harmonize with the act as a whole." *City of Rockford v 63rd Dist Court*, 286 Mich App 624, 627; 781 NW2d 145 (2009) (quotation marks and citation omitted). Further, "[s]tatutes that relate to the same subject or that share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates." *Walters v Leech*, 279 Mich App 707, 709-710; 761 NW2d 143 (2008).

MCL 600.3252 is a part of a chapter of the Revised Judicature Act titled "Foreclosure of Mortgage by Advertisement," and should be read in the context of the entire chapter. A mortgage is "[a] conveyance of an interest in real estate to secure the performance of an obligation," *In re Van Duzer*, 390 Mich 571, 577; 213 NW2d 167 (1973), typically a debt. The very purpose of mortgage foreclosure is to ensure that the mortgagor's debt, secured by a mortgage to a mortgagee, is satisfied. MCL 600.3252 applies when, after a foreclosure on one mortgage results in a surplus, a claimant specifically declares "a subsequent mortgage or lien encumbering the real estate, or some part thereof." MCL 600.3252 sets forth a general rule for distribution of the surplus amounts from the sale of foreclosed property, an exception to the general rule, and a process for resolution of circumstances after the exception is invoked. Under the plain language of the statute, all surplus proceeds must be paid on demand to "the mortgagor, his legal representatives or assigns," *unless* another claimant makes a claim of, specifically, "a subsequent mortgage or lien encumbering the real estate." MCL 600.3252; see *Schwartz v Irons*, 4 Mich App 628, 632; 145 NW2d 357 (1966). The Legislature unmistakably limited application of the surplus statute to situations wherein a junior mortgagee or lienholder held an interest in the foreclosed property at the time of the foreclosure. Once such a claimant has filed a claim with the person conducting the foreclosure sale, typically the sheriff, the person who conducted the sale is required to deposit the surplus proceeds with the clerk of the court pending resolution of conflicting claims. MCL 600.3252. Then, "any person or persons interested in the surplus, may apply to the court for an order to take proofs of the facts and circumstances contained in the claim or claims so filed." MCL 600.3252. The circuit court is tasked with examining the proofs and entering an order distributing the surplus funds in accordance with the rights of the claimants and interested persons. MCL 600.3252.

Appellant argues that PNC was no longer a subsequent mortgagee when it filed its claim pursuant to MCL 600.3252, because its security interest in the property was extinguished by the

foreclosure of the senior mortgage, and PNC was therefore precluded from claiming priority under MCL 600.3252. Appellant is correct that, in Michigan, the foreclosure of a senior mortgage extinguishes the lien of a junior mortgagee where the junior mortgagee does not exercise its right to redeem. *Advanta Nat'l Bank v McClarty*, 257 Mich App 113, 125; 667 NW2d 880 (2003). When property is not redeemed, "all right, title, and interest in the property vest[s]" in the purchaser. *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 139; 863 NW2d 344 (2014). However, after the sale of property, there is a statutory time period during which a junior mortgagee, amongst others, has a right to redeem the property. Consequently, PNC argues that its security interest in the property was not extinguished until the expiration of the redemption period. While there is some support for PNC's argument in this regard,[1] we find it unnecessary to resolve the issue here. Regardless of whether PNC's *security interest* in the property as junior mortgagee persisted until the expiration of the statutory redemption period, PNC retained a right to claim a priority interest *in the surplus funds* over the mortgagor as a subsequent mortgagee or lienholder at the time of the foreclosure sale pursuant to the explicit language of MCL 600.3252.

"Courts should not abandon common sense when construing a statute." *Diallo v LaRochelle*, 310 Mich App 411, 418; 817 NW2d 724 (2015). To accept appellant's argument would be to render nugatory all of MCL 600.3252, which provides for nothing other than an avenue for junior mortgagees and lienholders to claim an interest in surplus funds following a foreclosure sale. If the priority interest of all junior mortgagees and lienholders *to the surplus proceeds* was extinguished at the time of the foreclosure sale, along with their security interests in the property itself, there would be no claimants to support the application of MCL 600.3252. It is clear that the surplus statute "was intended to apply for the protection of subsequent mortgage claimants or lienholders," *Schwartz*, 4 Mich App at 632, granting them a limited

---

[1] Although we have held that "[t]he foreclosure of a senior mortgage extinguishes the lien of a junior mortgagee where the junior mortgagee did not redeem at the foreclosure sale," *Advanta Nat'l Bank*, 257 Mich App at 125, the sheriff's deed after foreclosure does not become operative and junior interests in the property are not extinguished until the statutory redemption period expires, see id. (stating that the plaintiff's junior mortgage "was extinguished after the four-month statutory redemption period expired."); see also MCL 600.3240; MCL 600.3236; *Bankers Trust Co of Detroit v Rose*, 322 Mich 256, 260; 33 NW2d 783 (1948), quoting *McCreery v Roff*, 198 Mich 558, 564; 155 NW 517 (1915) ("Legal title does not vest at once upon the auction sale on statutory foreclosure . . . but only at the expiration of the period allowed for redemption"); *Detroit Fidelity & Surety Co v Donaldson*, 255 Mich 129; 237 NW 380 (1931) (mortgagor does not lose all interest in property until time for redemption under the foreclosure decree expires). Additionally, Michigan case law has long recognized a junior mortgagee's right to redeem the property from a superior mortgagee in order to protect the junior interest, *Advanta National Bank*, 257 Mich App at 125; *Carter v Lewis*, 27 Mich 241, 242-243 (1873); *Powers v Golden Lumber Co*, 43 Mich 468, 470-472; 5 NW 656 (1880), and such a right could not logically exist if all of the junior mortgagee's interest was extinguished on the date of the foreclosure sale.

interest in foreclosure sale surplus proceeds superior to the mortgagor after a senior mortgage is satisfied. Granting subsequent mortgagees and lienholders a priority interest in foreclosure sale surplus proceeds is not inconsistent with the extinguishment of their security interests in the real property itself. Additionally, while not explicitly citing MCL 600.3252, this Court has stated that a junior mortgagee is entitled to claim the surplus after the foreclosure of a senior mortgage. See e.g., *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 91; 878 NW2d 816 (2016), quoting *Smith v General Mortg Corp*, 402 Mich 125, 128-129; 261 NW2d 710 (1978) ("No one disputes that the mortgagee is entitled to recover only his debt. Any surplus value belongs to others, namely, the mortgagor or subsequent lienors."); *Citizens State Bank v Nakash*, 287 Mich App 289, 295; 788 NW2d 839 (2010) ("[D]efendant's bid on the foreclosed property was in excess of his recoverable interest, entitling plaintiff, as a junior mortgagee, to claim the surplus."). Appellant concedes that PNC retained an interest in repayment as a general creditor. We think it clear that through MCL 600.3252, the Legislature intended to provide a limited avenue for collection of foreclosure sale surplus proceeds to subsequent mortgagees and lienholders, whose security interests in real property have been extinguished by the foreclosure of a senior mortgage, independent of their option to redeem.

The plain language of MCL 600.3252 provides that the surplus should be paid to the mortgagor "unless at the time of the sale, or before the surplus shall be so paid over" a claim is filed by a subsequent mortgagee or lienholder. The Legislature therefore provided a time period during which a subsequent mortgagee or lienholder may file a claim to foreclosure sale surplus proceeds, without regard to continuing security interests in the property itself or the statutory redemption period.[2] PNC filed a verified claim for the surplus just over a month after the foreclosure sale, and the surplus was deposited with the circuit court on the same day. It follows that the surplus had not yet been paid to appellant, and appellant does not assert otherwise. Nor does appellant assert that PNC's claim was otherwise untimely. PNC complied with MCL 600.3252's plain language and was therefore entitled to consideration as a claimant to foreclosure sale surplus proceeds under the statute.

Next, appellant argues that the trial court erred in its priority determination because, "[n]owhere does it actually say in any published case or in the statute itself, where the surplus funds are to go, or how the court is to determine the priority of the claimants." However, we find that the language of MCL 600.3252's final clause is unambiguous and clear in its direction. The statute plainly provides that the court shall enter an order "directing the disposition of the surplus moneys or payment thereof *in accordance with the rights of the claimant or claimant of persons*

---

[2] We acknowledge that the date upon which "the surplus shall be so paid over" to the mortgagor will typically be the date on which the statutory redemption period expires and all subsequent mortgagees forfeit their right to redeem. See MCL 600.3236. However, MCL 600.3252 does not explicitly create a continued security interest in real property until the end of the redemption period, or rest on an implied one. We believe that MCL 600.3252's statutory deadline is related to the statutory redemption period through coincidence only. As previously discussed, we decline PNC's request to find within MCL 600.3252 a continued security interest in the foreclosed property until the statutory redemption period's expiration.

-5-

*interested.*" MCL 600.3252 (emphasis added).  As previously discussed, the Legislature clearly intended to limit application of the surplus statute to situations wherein a junior mortgagee or lienholder held an interest in the foreclosed property at the time of the foreclosure sale.  The rights of any subsequent mortgagees or lienholders are therefore coincidental to their interests in the property on foreclosure.

Our statutes and case law provide clear guidance for a court's determination of interest priority in such cases.  "In general, Michigan is a race-notice state under MCL 565.29,[3] wherein the owner of an interest in land can protect his or her interest by properly recording it and the first to record an interest typically has priority over subsequent purchasers or interest holders." *Wells Fargo Bank, NA v SBC IV REO, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2016), slip op at 11 (footnote added).  The principle that the first interest owner to record obtains priority applies to liens and mortgages on real property. *Coventry Parkhomes Condominium Ass'n v Federal Nat Mortg Ass'n*, 298 Mich App 252, 256; 827 NW2d 379 (2012).  It is axiomatic that each mortgagee to record holds an interest in the property superior to the mortgagor until that interest is extinguished, either by satisfaction of the mortgage or default and foreclosure.  Therefore, we conclude that MCL 600.3252 requires the court to distribute surplus proceeds from a mortgage foreclosure sale by advertisement to any subsequent mortgagees or lienholders in accordance with their respective priorities under MCL 565.29 and related case law.  While these interests may compete or conflict, MCL 600.3252 allows the court, in situations involving conflicting interests, to take proofs at a hearing and direct the disposition accordingly.  Any remaining balance may then be distributed to the mortgagor, his representatives, or assigns.

Appellant does not dispute the general application of the race-notice principles, or argue that an exception to the general rule applies in this case.  There is no question that PNC's interest in the surplus funds, as a junior mortgagee, was superior to appellant's, as the legal representative of the mortgagor.  The trial court therefore did not err when it entered an order distributing the $55,336.17 in surplus funds to PNC.

Appellant suggests that the circuit court "could have merely turned over the sums to the Estate," and allowed PNC to file its creditor claim pursuant to the terms of EPIC.  However, appellant does not argue that the circuit court was required to do so.  MCL 600.3252 provides a clear avenue for junior mortgagees and lienholders to collect surplus proceeds *before* they are

---

[3] MCL 565.29, Michigan's race-notice statute, provides:

Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

dispersed to the mortgagor, his representatives, or assigns. The personal representative of the mortgagor's estate stands in his shoes and has no greater interest than the mortgagor. Further, to the extent appellant concedes that PNC would be entitled to the surplus as a creditor under EPIC, appellant's argument is moot as having no practical effect on this case. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010).

Finally, appellant asserts that the trial court erred when it provided "no findings of fact or application of law to any facts to render an important decision concerning the surplus funds." However, appellant did not identify any disputed facts in the lower court and has not done so on appeal. Indeed, before oral argument, appellant informed the trial court that "appearance before the court" would be "for arguments of law only" and that "[t]he facts in this case are not in dispute. Appellant has therefore effectively waived any challenge to the court's findings of fact, or lack thereof. See *The Cadle Co v City of Kentwood*, 285 Mich App 240, 254-255; 776 NW2d 145 (2009) ("The usual manner of waiving a right is by acts which indicate an intention to relinquish it . . . .") (quotation marks and citation omitted); *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003) ("[E]rror requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence."). Further, as discussed, the trial court correctly reasoned that, based on the undisputed facts, the surplus should be released to PNC in satisfaction of its lien on the property.

In sum, a reading of MCL 600.3252 leads us to conclude that a court must distribute foreclosure sale surplus funds claimed under that statute according to the priority of interests in the foreclosed property. Here, PNC filed its claim for the surplus funds in accordance with MCL 600.3252, and the circuit court properly entered an order distributing the surplus funds to PNC after determining that PNC's interest had priority. Because we affirm the circuit court's decision, we need not address appellant's "general concern" regarding bias in the lower court or appellant's request for judicial reassignment.

Affirmed.


/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Henry William Saad